IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TRENA DENISE SCOTT,    : | |
|     Plaintiff,    : | |
| : | |
| v.    : | Case No. 2:23-cv-2504-JDW |
| : | |
| PROJECT HOME, *et al.*,    : | |
|     Defendant.    : | |

## MEMORANDUM

Project HOME terminated Trena Scott for performance reasons, including insubordination. She claims Project HOME only did so because she complained about retaliation there, but she lacks the evidence to support her claim. I will therefore grant Project HOME's motion for summary judgment.

I.    BACKGROUND

    A.    Facts

Ms. Scott is a Black woman who worked as a Kitchen Coordinator at Project HOME, a nonprofit in Philadelphia that works to end homelessness, from October 2011 until her termination on August 17, 2021. On September 17, 2020, Project HOME issued a Supervision Form that counseled Ms. Scott on ways to ask questions or voice concerns in a way that was "not confrontational." (ECF No. 44-12 at 2.) On October 14, 2020, Project HOME issued another Supervision Form that noted concerns with the tone of Ms. Scott's communications.

1

On January 28, 2021, Stephen Landis, an Assistant Program Manager at Project Home, sent an email reporting on ways that Ms. Scott created a problematic work environment. (*See* ECF No. 44-14 at 2–4.) Ms. Scott's supervisor Jeanne Ciocca received the email and forwarded it to Project HOME's Director of Human Resources with a recommendation that Project HOME issue Ms. Scott a "PIP or other final disciplinary action." (*Id.* at 2.) Project HOME placed Ms. Scott on a PIP on February 17, 2021, but Ms. Scott did not sign the PIP, wrote a letter of rebuttal to the assertions in it, and claims that she did not receive "Due Process" in connection with the issuance of the PIP. (ECF No. 44-1 at ¶ 38.)

In June 2021, Ms. Scott applied for a position as a Residential Service Coordinator with Project HOME. Ms. Scott received an email from Project HOME telling her that she did not qualify for the position. She complained and received an interview, but her supervisor Nicholas Lordi told her that she did not receive the position due to her interpersonal relationships with him and with Ms. Ciocca. (ECF No. 44-1 at ¶ 49.) Ms. Scott told Mr. Lordi, "Oh, this is – this is like discriminatory. Like I don't know what you all doing here. I'm going to the EEOC." (*Id.* at ¶ 52.)

On June 25, 2021, Ms. Scott had an initial interview with the EEOC by telephone. She did not file a claim because the office was closed due to Covid-related restrictions, but she made an appointment for September 9, 2021, to file a charge of discrimination.

(*See* ECF No. 44-19.) Once Ms. Scott returned to work, she told multiple coworkers and her supervisor that she had filed a complaint with the EEOC.

Over the next several weeks, Ms. Scott had email exchanges with Mr. Lordi that Mr. Lordi deemed unprofessional. (Ms. Scott disagrees and contends the tone was professional.) On July 29, 2021, Ms. Ciocca emailed Ms. Williamson to recommend terminating Ms. Scott due to Ms. Scott's continued problems with interpersonal interactions. Project HOME terminated Ms. Scott on August 18, 2021. Ms. Scott emailed Human Resources the next day protesting her termination. On September 8, 2021, Ms. Scott had an interview with the EEOC. On September 21, 2021, she filed a Charge of Discrimination with the EEOC. That charge of discrimination does not assert that Project HOME terminated her for communicating with the EEOC, but she claims that she made that assertion to someone at the EEOC orally shortly after Project HOME terminated her.

### B. Procedural History

On June 29, 2023, Ms. Scott, filing *pro se,* brought claims against Project HOME for failure to stop harassment and retaliation pursuant to Title VII of the Civil Rights Act. On September 28, 2023, I dismissed all claims except for the retaliation claim based on Ms. Scott's filing a complaint with the EEOC. Ms. Scott filed an Amended Complaint on October 24, 2023, alleging claims under Title VII for race, color, and sex discrimination; failure to stop harassment; and retaliation. On February 6, 2024, I dismissed most of the new claims in the Amended Complaint. On February 21, 2024, Ms. Scott sought leave to

3

file a Second Amended Complaint, but I denied that motion because the proposed Second Amended Complaint would have repeated claims that I already dismissed. On September 26, 2024, Project HOME filed a motion for summary judgment. Ms. Scott responded, and she again seeks to raise issues that I have already dismissed, so I will not address them again. The Motion is ripe.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) permits a party to seek, and a court to enter, summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "[T]he plain language of Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

When ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted). However, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256

(3d Cir. 2007). "[D]isputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Clark v. Mod. Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (quoting *Celotex Corp.*, 477 US. at 322). While courts construe *pro se* documents liberally, "a *pro se* plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017).

### III.   DISCUSSION

Title VII retaliation claims are subject to *McDonnell Douglas* burden-shifting. *See Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). If the plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the defendant to provide a non-retaliatory justification for its actions, after which the plaintiff must show that the justification is pretextual. *See id.* Ms. Scott cannot show a *prima facie* case or pretext.

#### A.   *Prima Facie* Case

To make out a *prima facie* case of retaliation, the plaintiff must prove that (1) the plaintiff engaged in activity protected by Title VII, (2) the defendant took an adverse employment action against the plaintiff, and (3) there was a causal connection between the first two steps. *Kengerski v. Harper*, 6 F.4th 531, 536 (3d Cir. 2021). The record does not have enough evidence to support each of these elements.

### 1. Protected activity

Title VII protects activity opposing unlawful discrimination or participating in certain Title VII proceedings. *See Moore*, 461 F.3d at 341. For Title VII's anti-retaliation provisions to apply, "the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII," whether the employee is opposing or participating in a proceeding against the employer's activity. *Id.* The employee need not prove that the conduct was actually unlawful, only that it reasonably appeared unlawful. *See Kengerski*, 6 F.4th at 537. When an employee participates in formal proceedings, like going to the EEOC, courts "require only that the plaintiff file a formal complaint that alleges one or more prohibited grounds in order to be protected under Title VII." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 267 (3d Cir. 2006).

Ms. Scott has demonstrated that she engaged in protected activity. She contacted the EEOC in June 2021 to complain about her treatment by Project Home, including passing her over for a promotion and failing to protect her from harassment. Although she didn't file a charge of discrimination that day, I will credit her assertion that the EEOC was not able to accept her charge and told her that it would backdate a subsequent charge. Either way, a communication with the EEOC constitutes protected activity.

Ms. Scott also claims that an email she sent on July 21, 2021, constitutes protected conduct. She asserts that the email says, "[T]his is very discriminatory" and

that "we all should have equal opportunity to trainings." (ECF No. 44-1 at ¶ 72.) But the email exchange that Ms. Scott had on July 21, 2021, doesn't say that. Instead, in that email, she says only "I feel like I'm not getting fair treatment around advancement" and "I feel like I have to beg just to get treated equal here." (ECF No. 44-22.) These statements do not constitute protected activity because they are too vague to put Project HOME on notice that Ms. Scott was claiming that it discriminated against her on the basis of her membership in a protected class. See Barber v. CSX Distrib. Servs., 68 F.3d 694, 702 (3d Cir. 1995). The use of the words "fair" and "equal" is not enough, without some more context, to trigger Title VII's anti-retaliation protections.

### 2. Adverse action

For retaliation claims, an adverse employment action is any action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006). Ms. Scott's termination qualifies as such an adverse action.

### 3. Causal connection

To prove a prima facie case of retaliation, a plaintiff needs to raise a "likely inference" that the alleged adverse employment action is causally connected to her protected activity. Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 253 (3d Cir. 2017). "A plaintiff may rely on a broad array of evidence to demonstrate the causal link." Id. at 260 (cleaned up). Evidence can include inconsistent explanations for the

adverse employment action, a pattern of antagonism, temporal proximity, and more. *Id.* Additionally, the record as a whole may prove the inference.

For temporal proximity, "the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir. 1997). "Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (quote omitted). "[T]here is no bright line rule as to what constitutes unduly suggestive temporal proximity...." *Id.* at 233The Third Circuit has found a causal link where an employee was fired two days after a company received notice of its employee's EEOC claim. *See Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). However, it did not find a causal link where there was a gap of three months between the protected activity and the adverse action, finding "without more, [it] cannot create an inference of causation and defeat summary judgment." *LeBoon*, 503 F.3d at 233.

Seven weeks passed between Ms. Scott going to the EEOC and her termination. On its own, that timing is not suggestive enough to give rise to an inference of discrimination. I therefore must look to the evidence as a whole. Ms. Ciocca asked Ms. Williams about terminating Ms. Scott approximately three weeks before the actual termination, in late July 2021. So, in that respect, the timing is more like four weeks

8

from complaint to a discussion of termination, which makes it somewhat more suggestive. But the discussion of termination is not immediate, it calls back to the problems that Project HOME had with Ms. Scott before she complained to the EEOC, and it makes no mention of the EEOC. Taken as a whole, that evidence does not suggest a retaliatory motive. Ms. Scott therefore has not demonstrated a *prima facie* case of retaliation.

### B. Nondiscriminatory Reason

Even if Ms. Scott had made out a *prima facie* case, Project HOME met its burden to provide lawful justifications for its actions. Project HOME argued Ms. Scott had multiple performance and interpersonal issues and was put on two PIPs throughout her employment. Therefore, the burden shifts back to Ms. Scott to prove it was pretextual.

### C. Pretext

To prove pretext, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious retaliatory reason was more likely than not a determinative cause of the employer's action." *Daniels*, 776 F.3d at 198–99 (cleaned up). The plaintiff must do more than show the decision was "wrong or mistaken, but rather demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reason for its action that a reasonable factfinder could

rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted [non-retaliatory] reasons." *Id.* at 199 (cleaned up). To determine if the plaintiff met this burden, courts look to all the evidence, including the same evidence that supported the plaintiff's *prima facie* case. *See Carvalho-Grevious*, 851 F.3d at 262.

Viewing the evidence in the light most favorable to Ms. Scott, a reasonable juror could not find any evidence of pretext. Project HOME identified and documented Ms. Scott's insubordination to her supervisors, inappropriate workplace behavior that negatively affected her coworkers, and deficient performance. There's no evidence that suggests that calls into question that explanation for Ms. Scott's termination or that suggests that retaliation was the real motivating factor in her termination. She therefore has no evidence that Project HOME's explanation for her termination was pretext to cover up unlawful conduct.

## IV.   CONCLUSION

Ms. Scott has not demonstrated that retaliation led Project HOME to terminate her, so her claim cannot proceed. I will therefore grant Project HOME's summary judgment motion. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

December 19, 2024